**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YES I CAN SERVICES, INC.; YES I CAN LICENSED BEHAVIOR ANALYST PLLC D/B/A TRIUMPH BEHAVIOR SUPPORT; and ZAREPHATH INC.,<br><br>Plaintiffs,<br><br>– against –<br><br>ITCON INC.; LEAH FREIMAN; ALAN CEDENO; and JOHN DOES 1–10,<br><br>Defendants. | Civ. A. No. 1:26-cv-6965<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Yes I Can Services, Inc. ("Yes I Can"), Yes I Can Licensed Behavior Analyst PLLC d/b/a Triumph Behavior Support ("Triumph"), and Zarephath Inc. ("ZRPath") (collectively, "Plaintiffs" or the "Company"), by their attorneys, the Law Offices of Jonathan E. Neuman, Esq., for their Verified Complaint against Defendants ItCon Inc. ("ItCon"), Leah Freiman, Alan Cedeno, and John Does 1–10 (collectively, "Defendants"), allege as follows. Allegations about Plaintiffs and their own acts are made on personal knowledge. All other allegations are made on information and belief.

## PRELIMINARY STATEMENT

**1.** This action arises from a managed IT service provider's decision to turn the keys it was entrusted with into a weapon. Plaintiffs provide applied behavior analysis and related habilitative and healthcare services to children and other vulnerable individuals. They retained ItCon to administer their Microsoft 365 environments and computers. When a billing dispute arose, ItCon used that position to seize Plaintiffs' systems and hold them for ransom.

**2.** ItCon did not hide its purpose. When Plaintiffs' Director of Information Technology observed that ItCon's exclusive control would let it hold the Company hostage, ItCon's Chief Executive Officer answered, in words or substance: "Yes, I am going to hold you hostage now."

**3.** ItCon then did exactly that. After ZRPath terminated ItCon's services, ItCon remotely quarantined ZRPath's workstations and knocked them offline. It initiated six unauthorized ACH debits totaling $36,260.00 against ZRPath's bank account. It stripped Plaintiffs of their last administrative access to their own Microsoft 365 tenants. When Microsoft restored that access, ItCon locked Plaintiffs' users out, demanded advance payment as the price of letting them back in, took the money, and locked out the entire company the next day. It remotely disabled Plaintiffs' computers, deleted an Azure server holding critical data including protected health information, and left Plaintiffs unable to receive email from patients, families, and referral sources.

**4.** None of this is lawful debt collection. Whatever ItCon claims it is owed — and Plaintiffs dispute its invoices as grossly overstated — ItCon's remedy was to sue for payment, not to disable a healthcare provider's computers and data until it paid. Plaintiffs seek temporary, preliminary, and permanent injunctive relief restoring control of their own systems and barring further interference; damages under the Computer Fraud and Abuse Act, the Stored Communications Act, and New York law; restitution of the payment ItCon coerced; declaratory relief; and punitive damages.

## THE PARTIES

**5.** Plaintiff Yes I Can Services, Inc. is a New York corporation with its principal place of business at 5309 18th Ave Brooklyn, New York 11204. Yes I Can owns the Microsoft 365 tenant for the domain yesicanservices.com.

**6.** Plaintiff Triumph is a New York limited liability company with its principal place of business at 822 Mcdonald Ave, Brooklyn, New York 11218, Triumph owns the Microsoft 365 tenant for the domain triumphaba.com.

**7.** Plaintiff Zarephath Inc. is a Arizona corporation with its principal place of business at 4856 E. Baseline Rd., Mesa, Arizona 85206. ZRPath owns the Microsoft 365 tenant for the domain zrpath.com.

**8.** Jud Berman is Plaintiffs' Director of Information Technology.

**9.** Defendant ItCon Inc. is, on information and belief, a New York corporation with its principal place of business at 71 Lafayette Avenue, Suffern, New York 10901, in Rockland County. ItCon holds itself out as a managed IT service provider. Defendant Leah Freiman is ItCon's Chief Executive Officer and, on information and belief, resides in Monsey, New York. Ms. Freiman personally directed, authorized, and participated in the conduct alleged here, including the seizure of Plaintiffs' administrative access, her stated intent to hold Plaintiffs "hostage," and the September 3, 2026 payment demand.

**10.** Defendant Alan Cedeno is, on information and belief, an ItCon employee residing in New York. On information and belief, Mr. Cedeno personally issued or participated in issuing the June 23, 2026 commands that quarantined ZRPath's workstations, which ItCon's system logs attribute to an ItCon-managed account associated with him, and participated in other conduct alleged here.

**11.** Defendants John Does 1–10 are officers, employees, agents, or contractors of ItCon, whose identities are not yet known, who directed, authorized, or carried out the conduct alleged here. Plaintiffs will amend this Complaint to name them when their identities are known.

**JURISDICTION AND VENUE**

**12.** This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g), and the Stored Communications Act, 18 U.S.C. § 2707, arise under the laws of the United States.

**13.** This Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367(a). Those claims arise from the same course of conduct as the federal claims and form part of the same case or controversy.

**14.** This Court may grant declaratory relief under 28 U.S.C. §§ 2201 and 2202, and injunctive relief under 18 U.S.C. § 1030(g) and Federal Rule of Civil Procedure 65.

**15.** This Court has personal jurisdiction over ItCon because it is organized under the laws of New York, maintains its principal place of business in New York, and committed the acts alleged here in New York. This Court has personal jurisdiction over Ms. Freiman and Mr. Cedeno because, on information and belief, each resides in New York, and each committed tortious acts in New York and committed tortious acts outside New York that caused injury to Plaintiffs within it. N.Y. C.P.L.R. 302(a)(2)–(3).

**16.** Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred here. Yes I Can and Triumph maintain their principal places of business in Brooklyn, Kings County, within this District, and operate and manage the yesicanservices.com and triumphaba.com tenants from there. Some of the computers and user accounts that ItCon locked, quarantined, and disabled are used by Plaintiffs' personnel in Brooklyn, and ItCon's commands took effect on them here. The resulting interruption of Yes I Can's and Triumph's operations and email was felt principally at their Brooklyn offices. ItCon's September 3, 2026 payment demand was directed to and received by Yes I Can in this District,

and Yes I Can made the coerced payment from here. ItCon performed on-site services for Yes I Can and Triumph at their Brooklyn offices during the parties' relationship.

## FACTUAL ALLEGATIONS

### A. Plaintiffs and the vulnerable people they serve

**17.** Plaintiffs provide applied behavior analysis therapy and related habilitative and healthcare services to children with autism and other developmental disabilities and other vulnerable individuals in the Tristate area and in Arizona.

**18.** Plaintiffs' operations depend on their Microsoft 365 environments and computers. Plaintiffs use them for email, scheduling, clinical documentation, billing, and communication with patients, families, referral sources, payors, staff, and vendors.

**19.** Plaintiffs' systems store protected health information ("PHI") governed by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and its implementing regulations, which require Plaintiffs to protect the confidentiality, integrity, and availability of that information.

### B. Plaintiffs own their systems and data; ItCon was only their administrator

**20.** Plaintiffs own the Microsoft 365 tenants for yesicanservices.com, triumphaba.com, and zrpath.com, and all data, accounts, configurations, devices, endpoint-security deployments, and other assets within or connected to them (the "Company Systems"). Plaintiffs pay for the underlying subscriptions through ItCon as a pass-through.

**21.** Since approximately 2019, ItCon has served as Plaintiffs' managed service provider and technical administrator of the Company Systems under a written agreement.

**22.** ItCon's authority was limited to administering the Company Systems on Plaintiffs' behalf and for Plaintiffs' benefit. ItCon holds no ownership interest in the Company Systems. No

agreement gives ItCon a lien, security interest, or right to withhold, disable, or condition Plaintiffs' access to their own systems or data.

**23.** In that role, ItCon installed and managed software agents on Plaintiffs' computers, including SentinelOne, Absolute Resilience, Huntress, and N-able, and managed Plaintiffs' Hexnode mobile-device-management deployment. Whoever controls the consoles for these tools can remotely isolate Plaintiffs' computers from the network, lock them, or otherwise control them.

**C. ItCon seizes exclusive control and announces it will hold Plaintiffs "hostage"**

**24.** ItCon made itself the sole holder of Global Administrator access to Plaintiffs' three Microsoft 365 tenants. After Mr. Berman raised concerns about the risk of ItCon holding exclusive control, ItCon provided separate administrator accounts to Mr. Berman.

**25.** In or about January 8th 2026, without advance notice, ItCon revoked Mr. Berman's Global Administrator access. ItCon told him only that the change was for "security reasons" and that he was likely the only client to have noticed.

**26.** Mr. Berman asked ItCon to restore his access. ItCon refused and offered only limited alternative permissions.

**27.** Mr. Berman observed that this arrangement left ItCon able to hold the Company hostage. Within a couple of days, Ms. Freiman confirmed on the phone that this was her intent, stating in words or substance: "Yes, I am going to hold you hostage now."

**28.** Plaintiffs opened two support cases with Microsoft, Nos. 2601140040003156 and 2603020040010364, on or about January 14, 2026 and March 2, 2026, seeking to recover administrative control of their own tenants. Plaintiffs explained that the tenants held PHI and that the lack of independent administrative control posed serious compliance and operational risks.

Both times, Microsoft said it could not intervene in a dispute between a managed service provider and its customer and that Plaintiffs would need to pursue legal remedies.

**D. ItCon's overbilling and the billing dispute**

**29.** ItCon charged Plaintiffs full managed-service fees of approximately $150 to $180 per user, per month, plus associated subscription costs, for email accounts and licenses assigned to field personnel who were never onboarded to, never used, and never requested any managed services. ItCon performed no services for those users and incurred no cost of its own for them.

**30.** After ZRPath complained about ItCon's invoicing, ItCon reduced its original charge on September 2nd 2025 to ZRPath by $36,815. They wrote in the email "credit for overbilled users from June 2024 through August 2025," which was separate and apart from a $13,135 credit for "overbilled users on the Jan through March invoices" ItCon's revised final invoice to ZRPath still totaled approximately $130,000.

**31.** ZRPath then audited that invoice line by line. The audit showed that the invoice was overstated by more than an additional $93,074.75. On or about March 13, 2026, ZRPath offered to pay the remaining balance. ItCon refused that offer.

**32.** ItCon claims that Yes I Can and Triumph owe it several hundred thousand dollars. Plaintiffs are auditing those invoices. On information and belief, a substantial portion of that claimed balance is overstated for the same reasons.

**33.** Whatever ItCon claims it is owed, it had no right to collect by seizing, disabling, or destroying Plaintiffs' systems and data. Its remedy for any unpaid invoice was an action for payment.

**E. ZRPath terminates ItCon, and ItCon acknowledges it in writing**

**34.** In early May 2026, ZRPath regained independent control of its Microsoft 365 tenant, removed ItCon's access, and terminated ItCon's services for ZRPath.

**35.** Shortly thereafter ItCon acknowledged in writing that it no longer managed the ZRPath environment.

**F. June 23, 2026: ItCon remotely disables ZRPath's workstations**

**36.** On June 23, 2026, after its services for ZRPath had been terminated and after acknowledging in writing that it no longer managed ZRPath's devices, ItCon used the SentinelOne agent still resident on ZRPath's computers to issue network-quarantine commands that disconnected all ZRPath workstations from the network.

**37.** SentinelOne's logs attribute those commands to an ItCon-managed account associated with Alan Cedeno.

**38.** The quarantined computers could not reach the internet and were effectively inoperable. ZRPath's employees could not do their jobs, and services to ZRPath's clients were disrupted at least a week while Plaintiff were forced to travel and purchase new equipment.

**39.** ZRPath did not authorize ItCon to access its computers or to issue those commands. Any authority ItCon once had over ZRPath's systems had ended.

**G. August 11, 2026: ItCon attempts to withdraw $36,260 from ZRPath's bank account**

**40.** On August 11, 2026, while the billing dispute remained unresolved, ItCon initiated six ACH debits totaling $36,260.00 against ZRPath's business checking account.

**41.** ZRPath did not authorize those debits. ZRPath had not given ItCon any standing ACH authorization, and each prior debit had required a new authorization in writing. ZRPath's

bank flagged the debits as unauthorized and reversed them the next day. ItCon has never explained them.

**H. August 12, 2026: ItCon strips Plaintiffs' last administrative access**

**42.** On August 12, 2026, ItCon removed the last administrative access Plaintiffs held over the yesicanservices.com and triumphaba.com tenants. ItCon locked Plaintiffs' designated administrator accounts entirely, which also cut off Plaintiffs' ability to open support tickets with Microsoft about their own systems.

**I. ItCon retaliates when Microsoft restores Plaintiffs' access, and extracts a coerced payment**

**43.** On September 1, 2026, Microsoft restored Global Administrator access to triumphaba.com tenants to Plaintiffs.

**44.** On multiple occasion, Plaintiffs informed ItCon that it was no longer authorized to take any action in the Company Systems without Plaintiffs' express approval. On or about September 11, 2026, Plaintiffs notified ItCon in writing through counsel that it was no longer authorized to take any action in the Company Systems without Plaintiffs' express approval.

**45.** On August 31, 2026, ItCon locked Yes I Can users out without prior warning and demanded payment for August in the amount of $9,698.77 for YIC and $23,879.77 for Triumph. Under that duress, Plaintiffs paid it on September 1st and ItCon reopened most users. The next morning on Sep 2, 2026, ItCon again locked out all the users demanding payment ahead of schedule for September 2026 in the amount of $9,883.18 for YIC and $24,237.54 for Triumph, which under that duress was again paid that day. ItCon then reopened most users. On September 3, 2026, ItCon locked Yes I Can users out of their accounts once again. By email sent on or about September 3, 2026, ItCon refused to restore their access unless Yes I Can paid, in advance, for the full disputed balance.

**46.** Yes I Can could not operate or serve its clients without its users' access, but Plaintiffs refused to further accede to ItCon's extortionist demands.

**J. ItCon remotely disables Plaintiffs' computers**

**47.** During the same period, ItCon used SentinelOne, Absolute Resilience, and other agents it controlled to remotely lock and disable every Company computer it could still reach that Plaintiffs had not yet been able to disconnect from ItCon's management.

**K. ItCon deletes an Azure server holding critical data and PHI**

**48.** On or about September 8, 2026, ItCon deleted an Azure server belonging to Plaintiffs that hosted critical Company data, including PHI.

**49.** By September 8, 2026, the parties' dispute had been open for months and litigation was reasonably anticipated. ItCon was under a duty to preserve relevant evidence, including the Company data and system records it deleted.

**L. ItCon cuts off Plaintiffs' email**

**50.** Since in or about the beginning of September, all inbound email sent to Plaintiffs' domains has bounced back to senders as undeliverable. It is unknown whether Defendant has deleted some or all of Plaintiffs' data, the event of which would be catastrophic for Plaintiffs.

**51.** ItCon caused this outage through its control of Plaintiffs' systems.

**52.** The outage cuts Plaintiffs off from patients, families, referral sources, staff, and vendors.

**M. Plaintiffs' demand, and ItCon's response**

**53.** On September 11, 2026, Plaintiffs' counsel sent ItCon a written demand. It demanded that ItCon restore Plaintiffs' access and email, remove or transfer its agents, cease all

further access, account for the ACH debits and the server deletion, refund the September payments, and preserve all relevant evidence.

**54.** ItCon has not responded or complied.

**N. Plaintiffs' harm**

**55.** ItCon's conduct has caused Plaintiffs loss, including the cost of responding to ItCon's actions, assessing the damage, engaging outside IT help, and restoring data, systems, and access, together with revenue lost and costs incurred because of the interruption of service. Those losses exceed $5,000 in the aggregate during a one-year period and total at least $150,000.

**56.** ItCon's conduct modified or impaired, or potentially modified or impaired, the, treatment, or care of one or more individuals; canceled or delayed sessions; made inaccessible treatment plans or session notes; and caused an inability to coordinate care with families and providers.

**57.** ItCon's conduct is causing irreparable harm that money cannot repair: loss of client relationships and goodwill, disruption of care to vulnerable children, the threat to the integrity and availability of PHI, and the continuing risk that ItCon will disable or destroy more of Plaintiffs' systems and data.

**58.** ItCon acted willfully, maliciously, and with conscious disregard of Plaintiffs' rights and of the welfare of the vulnerable people Plaintiffs serve.

## <u>CLAIMS FOR RELIEF</u>

**COUNT I — Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(A) and (g): Knowing Transmission Causing Intentional Damage (All Plaintiffs against All Defendants)**

**59.** Plaintiffs repeat paragraphs 1 through 58.

**60.** Plaintiffs' computers, servers, and cloud-hosted systems, including the Company Systems and the deleted Azure server, are used in and affect interstate and foreign commerce and

communication. They are located in New York, New Jersey, and elsewhere in the United States, and in several foreign countries, including Israel, the Philippines, and the Dominican Republic; those located outside the United States are used in a manner that affects interstate and foreign commerce and communication of the United States. They are "protected computers" under 18 U.S.C. § 1030(e)(2)(B).

**61.** Defendants knowingly caused the transmission of programs, information, codes, and commands to those protected computers. These included the June 23, 2026 network-quarantine commands, the account lockouts of August 12, September 3, 2026, the remote lock commands sent through SentinelOne, Absolute Resilience, and other agents, the command deleting the Azure server, and the changes that disabled Plaintiffs' inbound email.

**62.** As a result, Defendants intentionally caused "damage" under 18 U.S.C. § 1030(e)(8): impairment to the integrity and availability of Plaintiffs' data, programs, systems, and information.

**63.** Defendants caused that damage without authorization. Whatever administrative access ItCon held at any given time, no Plaintiff authorized ItCon to isolate, lock, disable, or delete its systems or data, least of all to coerce payment of a disputed bill.

**64.** Defendants' conduct caused Plaintiffs "loss" under 18 U.S.C. § 1030(e)(11) aggregating at least $5,000 in value during a one-year period, 18 U.S.C. § 1030(c)(4)(A)(i)(I). It also modified or impaired, or potentially modified or impaired, the medical examination, diagnosis, treatment, or care of one or more individuals, 18 U.S.C. § 1030(c)(4)(A)(i)(II).

**65.** Under 18 U.S.C. § 1030(g), Plaintiffs are entitled to compensatory damages and injunctive and other equitable relief. This action is brought within two years of the acts complained of.

**COUNT II — Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), (a)(5)(B), (a)(5)(C), and (g): Access Without Authorization (ZRPath against All Defendants; all Plaintiffs as to conduct after authorization was revoked)**

**66.** Plaintiffs repeat paragraphs 1 through 65.

**67.** By early May 2026, ZRPath had terminated ItCon's services and removed its access, and ItCon had acknowledged in writing that it no longer managed ZRPath's environment. From then on, ItCon had no authorization to access ZRPath's computers.

**68.** On June 23, 2026, Defendants intentionally accessed ZRPath's protected computers without authorization through the SentinelOne agent and, on information and belief, obtained information from them, including device, user, and network data, in violation of 18 U.S.C. § 1030(a)(2)(C).

**69.** Through that unauthorized access, Defendants recklessly caused damage, in violation of 18 U.S.C. § 1030(a)(5)(B), and caused damage and loss, in violation of 18 U.S.C. § 1030(a)(5)(C).

**70.** As Plaintiffs had revoked ItCon's authorization over the Yes I Can and Triumph systems, Defendants' later access to those systems, including the lockouts, remote device locks, server deletion, and email disruption, was likewise without authorization and violated the same provisions.

**71.** Plaintiffs suffered loss aggregating at least $5,000 during a one-year period, and the conduct modified or impaired, or potentially modified or impaired, the care of one or more individuals. Plaintiffs are entitled to damages and injunctive relief under 18 U.S.C. § 1030(g).

**COUNT III — Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(7)(C) and (g): Extortion Involving Computers (Yes I Can against All Defendants)**

**72.** Plaintiffs repeat paragraphs 1 through 71.

**73.** On or about September 3, 2026, with intent to extort money from Yes I Can, Defendants transmitted in interstate commerce, by email a communication demanding that Yes I Can pay in advance for two months of Microsoft licensing as the condition for restoring its users' access.

**74.** That demand was made in relation to damage to Yes I Can's protected computers — the lockout of its users' accounts — and Defendants caused that damage to facilitate the extortion.

**75.** **76.** Yes I Can paid $19,581.95 and Triumph paid $48,117.32 under duress. Defendants then locked out the entire company again on September 3, 2026.

**76.** Yes I Can suffered loss aggregating at least $5,000 during a one-year period, and the conduct modified or impaired, or potentially modified or impaired, the care of one or more individuals. Yes I Can is entitled to damages and injunctive relief under 18 U.S.C. § 1030(g).

**COUNT IV — Stored Communications Act, 18 U.S.C. §§ 2701(a) and 2707 (Yes I Can and Triumph against All Defendants)**

**77.** Plaintiffs repeat paragraphs 1 through 76.

**78.** Microsoft's Exchange Online service, which hosts Plaintiffs' mailboxes, is a facility through which an electronic communication service is provided.

**79.** Defendants intentionally accessed that facility without authorization, or intentionally exceeded their authorization to access it, and thereby prevented Plaintiffs' authorized users from accessing wire and electronic communications while those communications were in electronic storage in that system.

**80.** Defendants acted knowingly and intentionally, and their violation was willful.

**81.** Under 18 U.S.C. § 2707, Yes I Can and Triumph are entitled to equitable and declaratory relief, actual damages and Defendants' profits (and in no case less than $1,000 per plaintiff), punitive damages, and reasonable attorneys' fees and litigation costs.

**COUNT V — Conversion (All Plaintiffs against All Defendants)**

**82.** Plaintiffs repeat paragraphs 1 through 81.

**83.** Plaintiffs own and have the superior right to possess the Company Systems, including their tenants, accounts, electronic records, and data, and the data hosted on the deleted Azure server. That property is specific and identifiable.

**84.** Under New York law, electronic records and data are subject to conversion in the same way as tangible property. *Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283 (2007).

**85.** Defendants intentionally exercised unauthorized dominion over that property to the exclusion of Plaintiffs' rights, by seizing and withholding administrative control of Plaintiffs' tenants, locking Plaintiffs out of their own accounts and data, and deleting the Azure server and its data.

**86.** Plaintiffs demanded return of their property, including by letter dated September 11, 2026. Defendants refused and failed to comply.

**87.** Plaintiffs have been damaged in an amount to be determined at trial. Because Defendants acted willfully and maliciously, Plaintiffs are also entitled to punitive damages.

**COUNT VI — Trespass to Chattels (All Plaintiffs against All Defendants)**

**88.** Plaintiffs repeat paragraphs 1 through 87.

**89.** Plaintiffs own and possess the computers, servers, and systems that make up the Company Systems.

**90.** Defendants intentionally, and without justification or consent, interfered with Plaintiffs' use and enjoyment of that property by quarantining, locking, and disabling Plaintiffs' computers and by locking Plaintiffs out of their systems.

**91.** That interference impaired the condition, quality, and value of Plaintiffs' property and deprived Plaintiffs of its use for a substantial time.

**92.** Plaintiffs have been damaged in an amount to be determined at trial and are entitled to punitive damages.

**COUNT VII — Tortious Interference with Prospective Business Relations (All Plaintiffs against All Defendants)**

**93.** Plaintiffs repeat paragraphs 1 through 92.

**94.** Plaintiffs have ongoing business relationships with numerous third parties, which has been impacted by Defendants' wrongful conduct

**95.** Defendants knew of those relationships and knew that Plaintiffs depend on uninterrupted access to their systems to maintain them.

**96.** Defendants intentionally interfered with those relationships by disabling Plaintiffs' computers, locking Plaintiffs out of their systems, and cutting off Plaintiffs' email. They used wrongful means to do so, including the computer crimes and independent torts alleged in this Complaint, and acted to coerce payment of a disputed debt.

**97.** Defendants' interference injured those relationships.

**98.** Plaintiffs have been damaged in an amount to be determined at trial and are entitled to punitive damages.

**COUNT VIII — Breach of Contract (All Plaintiffs against ItCon)**

**99.** Plaintiffs repeat paragraphs 1 through 98.

**100.** Each Plaintiff and ItCon are parties to a valid and enforceable agreement under which ItCon agreed to provide managed IT services in exchange for payment.

**101.** Plaintiffs performed their obligations under the agreement, and separately their performance was excused by ItCon's material breach as described herein.

**102.** ItCon breached the agreement by, among other things: (a) billing management fees for users it never serviced; (b) using its administrative access to disable, lock, and delete Plaintiffs' systems and data rather than to administer them; (c) refusing to return administrative control of Plaintiffs' systems; and (d) initiating unauthorized debits against ZRPath's bank account.

**103.** Plaintiffs have been damaged in an amount to be determined at trial, including at least $250,000 in overpayments.

**COUNT IX — Breach of the Implied Covenant of Good Faith and Fair Dealing, in the Alternative (All Plaintiffs against ItCon)**

**104.** Plaintiffs repeat paragraphs 1 through 103.

**105.** Every contract governed by New York law includes an implied covenant of good faith and fair dealing.

**106.** To the extent the agreement gave ItCon discretion over the administration of Plaintiffs' systems, ItCon exercised that discretion in bad faith and for an improper purpose — to hold Plaintiffs' systems hostage — and so deprived Plaintiffs of the fruits of the agreement.

**107.** Plaintiffs plead this claim in the alternative, to the extent any of this conduct is found not to breach an express term. Plaintiffs have been damaged in an amount to be determined at trial.

**COUNT X — Money Had and Received / Restitution of Payment Made Under Economic Duress (Yes I Can against ItCon)**

**108.** Plaintiffs repeat paragraphs 1 through 107.

**109.** ItCon obtained Yes I Can's September payments by a wrongful threat: continuing to withhold Yes I Can's access to its own systems and data.

**110.** That threat left Yes I Can no reasonable alternative. It could not operate, serve its clients, or protect their PHI without access, and no legal remedy could restore access quickly enough.

**111.** Yes I Can promptly repudiated the payment and demanded its return, including by letter dated September 11, 2026.

**112.** ItCon received money belonging to Yes I Can and benefited from it, and in equity and good conscience ItCon should not be permitted to keep it. Yes I Can is entitled to restitution with interest.

**COUNT XI — Declaratory Judgment, 28 U.S.C. §§ 2201–2202 (All Plaintiffs against ItCon)**

**113.** Plaintiffs repeat paragraphs 1 through 112.

**114.** An actual, substantial, and immediate controversy exists between Plaintiffs and ItCon. ItCon claims the right to withhold, disable, and condition Plaintiffs' access to the Company Systems until Plaintiffs pay disputed invoices, and to charge management fees for users it never serviced. Plaintiffs deny both claims.

**115.** Plaintiffs seek a declaration that: (a) Plaintiffs own the Company Systems, including their tenants, domains, accounts, data, devices, and subscriptions; (b) ItCon has no lien, security interest, retention right, or right of setoff that permits it to withhold, disable, or condition Plaintiffs' access to the Company Systems; (c) ItCon's authorization to access ZRPath's systems ended, and its authorization to take any action in the remaining Company Systems ended; and (d) ItCon is not entitled to management fees for users to whom it provided no services.

## PRAYER FOR RELIEF

Plaintiffs ask the Court to enter judgment in their favor and against Defendants, jointly and severally, as follows:

**A.** A temporary restraining order and preliminary and permanent injunctions directing ItCon, its officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them, to:

1. restore full Global Administrator access to each of Plaintiffs' Microsoft 365 tenants for the administrator accounts Plaintiffs designate, and deliver all administrator credentials and recovery information;
2. unlock all of Plaintiffs' user accounts and devices that ItCon has locked, quarantined, or disabled, without conditions or payment demands;
3. restore normal inbound and outbound email for all of Plaintiffs' domains, and cease any interference with Plaintiffs' DNS records, MX records, spam filtering, or mail routing;
4. release every network quarantine, isolation, or other restriction on Plaintiffs' computers, and either transfer full administrative control of, or completely remove, every ItCon-controlled agent, including SentinelOne, Absolute Resilience, Huntress, and N-able;
5. transfer full administrative rights to Plaintiffs' Hexnode MDM deployment and network firewalls, with current configuration files, and deliver all passwords and credentials for Plaintiffs' on-premises servers;
6. deliver a complete inventory of Plaintiffs' systems, tenants, domains, subscriptions, and configurations, with all recovery accounts and keys;

7. cease all access to, and any action affecting, Plaintiffs' systems, accounts, devices, networks, and data, and forward to Plaintiffs, without acting on it, any notification ItCon receives about Plaintiffs' environment;

8. refrain from initiating any debit, withdrawal, or charge against any of Plaintiffs' bank accounts or payment methods without Plaintiffs' express prior written authorization;

9. preserve all documents and electronically stored information relating to Plaintiffs, including all SentinelOne, Absolute Resilience, Huntress, N-able, Hexnode, Azure, and Microsoft 365 audit, administrative, command, deletion, and access logs, with account attribution; and

10. provide a written account, under oath, of the September 8, 2026 deletion of Plaintiffs' Azure server — what was deleted, why, and by whom — and reasonable assistance in restoring the affected data.

**B.** A declaratory judgment as set out in Count XI.

**C.** Compensatory damages in an amount to be determined at trial, but not less than $500,000.

**D.** Actual damages, statutory damages of not less than $1,000 per plaintiff, and punitive damages under 18 U.S.C. § 2707(c).

**E.** Restitution of the money that ItCon obtained from Plaintiffs in September 2026.

**F.** Punitive damages as applicable.

**G.** Pre-judgment interest at the rate of nine percent per year under N.Y. C.P.L.R. 5001 and 5004 on Plaintiffs' state-law claims, and post-judgment interest.

**H.** Reasonable attorneys' fees and litigation costs under 18 U.S.C. § 2707(b)(3), and the costs of this action.

**I.** Such other and further relief as the Court finds just and proper.

## DEMAND FOR JURY TRIAL

Under Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues so triable.

Dated: Fresh Meadows, New York
October 21, 2026

/s/ Jonathan E. Neuman
Jonathan E. Neuman, Esq.
*Attorney for Plaintiffs*
176-25 Union Turnpike, Suite 230
Fresh Meadows, New York 11366
Tel. (347) 450-6710
Fax (718) 228-3689
jnesq@jenesqlaw.com