UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
YES I CAN SERVICES, INC, *et al.*,

Plaintiffs,

- against -

ITCON INC., *et al.*,

Defendants.
-------------------------------------------------------x

**TEMPORARY RESTRAINING ORDER**
26-CV-6965 (PKC) (RML)

PAMELA K. CHEN, United States District Judge:

On October 29, 2026, Plaintiffs Yes I Can Services, Inc., Yes I Can Licensed Behavior Analyst, and Zarephath Inc. (collectively, "Plaintiffs"), which provide children with autism and other developmental disabilities with therapy and other healthcare services, (Dkt. 1, at ¶ 17), commenced this action against their former managed service provider ItCon, Inc. ("ItCon"), and various of ItCon's officers, including Leah Freiman and Alan Cedeno (collectively, "Defendants"), alleging, *inter alia*, violations of the Computer Fraud and Abuse Act. (*Id.* ¶¶ 59–76.) As Plaintiffs' managed service provider, ItCon remotely monitored and maintained Plaintiffs' IT infrastructure. (*Id.* ¶¶ 20–23.) The relationship between the parties soured following Plaintiffs' complaints in late 2025 that ItCon was overbilling Plaintiffs for its services. (*Id.* ¶¶ 29–33.)

Plaintiffs allege that ItCon's threats began in January 2026, when its employees locked Plaintiffs' IT Director out of his administrative account for Plaintiffs' computer systems and told him that ItCon would "hold [Plaintiffs] hostage now." (*Id.* ¶¶ 24–28.) Plaintiffs terminated their managed service provider agreement with ItCon. (*Id.* ¶ 34.) But in June 2026, ItCon gained unauthorized access to Plaintiffs' computers and disconnected them from the network, causing disruptions to Plaintiffs' services for "at least a week." (*Id.* ¶¶ 36–39.)

The situation escalated on August 31, 2026, when ItCon "locked [Plaintiffs'] users out" of Plaintiffs' computer systems and "demanded payment." (*Id.* ¶ 45.) "Under that duress, Plaintiffs paid." (*Id.*) Only then did ItCon reinstate Plaintiffs' access. (*Id.*) ItCon has done the same twice since. (*Id.*) Most recently, on September 3, 2026, Defendant indicated that it would only reinstate Plaintiffs' access if Plaintiffs paid the "full disputed balance." (*Id.*) In addition, ItCon deleted one of Plaintiffs' servers, which hosted the protected health information ("PHI") of several of Plaintiffs' clients. (*Id.* ¶¶ 48–49.) ItCon has also interfered with Plaintiffs' email system; Plaintiffs now cannot receive any inbound emails, including from their clients. (*Id.* ¶¶ 50–52.)

Plaintiffs allege that they have lost revenue due to the service disruptions, and they have expended significant costs "engaging outside IT help, and restoring data, systems, and access." (*Id.* ¶ 55.) Further, they argue that ItCon's conduct is continuing to lose them clients and goodwill, disrupt the care they provide "to vulnerable children," and threaten "the integrity and availability of [their client's] PHI." (*Id.* ¶ 57.) Plaintiffs have "canceled or delayed" "numerous sessions" with clients because of their inability to connect with clients via email. (Dkt. 6-1 at 7.)

On November 11, 2026, Plaintiffs filed a Motion for a Temporary Restraining Order. (Dkt. 6.) The Court finds that Plaintiffs have made the requisite showing at this stage to warrant the requested temporary relief. Therefore, the Court hereby GRANTS Plaintiffs' Motion for a Temporary Restraining Order as specified herein:

## ORDER TO SHOW CAUSE

**IT IS HEREBY ORDERED** that Defendants show cause before this Court at a hearing to be held **at 1:00 p.m. ET on Friday, November 20, 2026, in Courtroom 4F North, at 225 Cadman Plaza East, Brooklyn, New York**, why an Order should not be issued pursuant to Federal Rule of Civil Procedure 65(a):

(1) enjoining Defendants from accessing Plaintiffs' IT infrastructure, including Plaintiffs' computer systems, without authorization; and

(2) directing Defendants to restore Plaintiffs' email servers and reverse any other unauthorized changes made to Plaintiffs' IT infrastructure.

Defendants shall file, **on or before 5:00 p.m. ET on November 18, 2026**, a letter on the docket addressing the the four factors, discussed herein, for determining whether preliminary relief is warranted: (i) irreparable harm, (ii) sufficiently serious questions going to the merits, (iii) a balance of hardships decidedly favoring Plaintiffs, and (iv) that issuance of the TRO is in the public interest.

**TEMPORARY RESTRAINING ORDER**

**IT IS FURTHER ORDERED** that pending the show cause hearing and determination of this Order to Show Cause, Defendants and all others acting on their behalf (collectively, the "Restrained Parties"), shall, upon service of this Order in the manner described below, be immediately temporarily restrained from accessing Plaintiffs' IT infrastructure, including Plaintiffs' computer systems, without authorization. The Restrained Parties shall also immediately restore Plaintiffs' email servers and reverse any other unauthorized changes made to Plaintiffs' IT infrastructure.

The Court finds that the issuance of the Temporary Restraining Order ("TRO") is warranted because Plaintiffs have shown: (i) irreparable harm, (ii) sufficiently serious questions going to the merits, (iii) a balance of hardships decidedly favoring Plaintiffs, and (iv) that issuance of the TRO is in the public interest. *See State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 79–80 (2d Cir. 2024) (articulating this standard for granting preliminary injunctions); *see also AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc.*, 740 F. Supp. 2d 465, 471 (S.D.N.Y. 2010) (applying this standard to applications for TROs).

First, the Court finds that Plaintiffs have sufficiently shown irreparable harm—the "'single most important prerequisite' for granting [ ] a TRO," *Christmas House USA Inc. v. ChristmasLand Experience LLC*, No. 23-CV-8412 (LDH) (SIL), 2024 WL 1494687, at *3 (E.D.N.Y. Apr. 5, 2024) (citing *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009))—in the form of disruptions to their communications with clients, (Dkt. 6-1, at 7–8). Courts in the Second Circuit "have recognized that software-related operational disruptions, particularly those affecting the services provided to customers, can constitute irreparable harm." *Probax USA, Inc. v. Allan*, No. 26-CV-9052 (VSB), 2026 WL 3390541, at *4 (S.D.N.Y. Nov. 9, 2026) (collecting cases). Moreover, the services here—therapy and other healthcare services for children with disabilities—are of paramount importance. *C.f. Innovative Health Sys., Inc. v. City of White Plains*, 931 F. Supp. 222, 240 (S.D.N.Y. 1996) (enjoining the government from interfering with the renovation of a drug rehabilitation treatment facility, reasoning that "the deprivation of treatment needed . . . constitutes irreparable injury"), *aff'd in part*, 117 F.3d 37 (2d Cir. 1997); *New York v. Admin. for Child. & Fams.*, 833 F. Supp. 3d 361, 401 (S.D.N.Y. 2026) (enjoining the government from conditionally freezing funds to social services programs, citing fact that "even a 'temporary disruption will constrain [p]laintiffs' ability to . . . deliver crucial social services to [ ] vulnerable families'").

Second, Plaintiffs have shown serious questions on the merits of its Computer Fraud and Abuse Act ("CFAA") claims. "[The] CFAA prohibits 1) 'knowingly caus[ing] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caus[ing] damage without authorization, to a protected computer;' 2) 'intentionally access[ing] a protected computer without authorization, and as a result of such conduct, recklessly caus[ing] damage;' or 3) 'intentionally access[ing] a protected computer without authorization, and as a

result of such conduct, caus[ing] damage and loss.'" *Veksler v. Wipro, LLC*, No. 25-369, 2025 WL 3686468, at *1 (2d Cir. Dec. 19, 2025) (summary order) (citing 18 U.S.C. § 1030(a)(5)(A)–(C)). "The CFAA defines 'protected computer' in part as a computer 'which is used in or affecting interstate or foreign commerce or communication.'" *United States v. Cuomo*, 125 F.4th 354, 363 (2d Cir. 2026) (citing 18 U.S.C. § 1030(e)(2)(B)). Plaintiffs' computers likely constitute "protected computers" under the CFAA because Plaintiffs use them to provide services to clients across the Tristate Area and in Arizona. (Dkt. 1, at ¶ 17.) Plaintiffs have alleged that ItCon accessed their IT infrastructure without authorization, including for months after Plaintiffs terminated ItCon as their managed service provider. Upon gaining unauthorized access, ItCon damaged them by, among other things, deleting one of Plaintiffs' servers containing clients' PHI and interfering with Plaintiffs' email system.

Third, Plaintiffs have "demonstrated that the balance of hardships tips decidedly in [their] favor." *State Farm*, 120 F.4th at 84. The emergency relief provided herein will not ultimately deprive ItCon of any payment, should it be determined that Plaintiffs owe ItCon money. Absent the TRO, Plaintiffs' clients will continue to suffer from a lack of reliable channels of communication with their therapists.

Finally, the Court finds that the TRO is in the public interest. *C.f. Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 333, 449 (D. Conn. 2020) (finding the public interest weighed in favor of granting TRO that required prison, amid onset of the COVID-19 pandemic, to release medically vulnerable inmates on home confinement, noting the "grave risk to vulnerable inmates' health").

Absent further order of this Court, the TRO will expire 14 days after its entry, on **Thursday, November 26, 2026**. *See* Fed. R. Civ. P. 65(b)(2) (TROs expire 14 days after entry absent good cause or consent).

**SECURITY**

**IT IS FURTHER ORDERED** that by November 17, 2026, Plaintiffs post an undertaking with the Clerk of the Court in the form of a bond, cash, or check in the amount of $10,000 as security for the payment of such costs and damages as may be incurred or suffered by any party as a result of any undue harm caused by the TRO and Order to Show Cause, and that such undertaking, if in the form of check or cash, shall be held in an interest-bearing account. *See* Fed. R. Civ. P. 65(c) (TRO may only issue "if the movant gives security in an amount that the court considers proper"). Plaintiffs shall file on the docket by November 17, 2026 a letter confirming compliance with this directive.

**SERVICE OF THIS ORDER**

**IT IS FURTHER ORDERED** that service of a copy of this TRO and Order to Show Cause together with Plaintiffs' November 11, 2026 submissions, (Dkt. 6), shall be made upon Defendants on or before 10:00 a.m. on November 13, 2026, and that Plaintiffs shall file on the docket by November 16, 2026 a declaration of service affirming service on Defendants.

**FAILURE TO ATTEND SHOW CAUSE HEARING**

**IT IS FURTHER ORDERED** that Defendants are hereby put on notice that failure to attend the show cause hearing scheduled for **November 20, 2026 at 1:00 p.m. ET** shall result in the automatic issuance of a preliminary injunction, which shall be deemed to take effect immediately and shall extend until further order of this Court. The Restrained Parties shall be deemed to have actual notice of the issuance and terms of such preliminary injunction, and any act

by any of the Restrained Parties in violation of its terms may be considered and prosecuted as contempt of this Court.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: November 12, 2026
Brooklyn, New York